UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GENE MINETTI,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE, STATE OF WASHINGTON, and KING COUNTY<br><br>                    Defendants. | No.  C04-5685Z<br><br>ORDER |

## BACKGROUND

Plaintiff Gene Minetti alleges that the City of Seattle operates a criminal enterprise in concert with the State of Washington, the Seattle Municipal Court, the King County District Court, the King County Superior Court, the Washington State Court of Appeals, the Washington State Supreme Court, the Federal District Court for the Western District of Washington, the King County Prosecutor, the Washington State Patrol, the Washington State Attorney General, and the Governor.  Plaintiff alleges these various governmental entities have conspired to violate his Constitutional rights, and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq.  Plaintiff brings this action pursuant to RICO and 42 U.S.C. § 1983, and Washington State law.

ORDER   1–

**A.     City of Seattle**

    **1.     Starbucks, April 2002.**

Plaintiff alleges he was harassed at Starbucks when "four S.P.D. Ofcs. did for no good reason attempt to enter the single occupancy Men's Room . . . while Minetti already occuppied (sic) said room." Compl., docket no. 4, at 2. Plaintiff alleges the officers caused a commotion, intimated they planned to use a stun gun on him, planted drugs, and caused him to be falsely arrested. Id. He further alleges he was denied bail and held without cause. Id.

The arresting officer's report indicates Plaintiff was arrested for obstruction at Starbucks on April 21, 2002. See DeLuca Decl., docket no. 30-3, Ex. A. Plaintiff had been using the restroom for a long time when Officer DeLuca knocked on the door. Id. at 2-3. Plaintiff opened the door, screamed obscenities, and assumed an aggressive, threatening stance. Id. at 2. The officer feared Plaintiff was about to strike him, and Plaintiff was handcuffed for officer safety. Id. The officer confirmed with employees and witnesses that Plaintiff was an ongoing problem, and attempted to obtain Plaintiff's name for a trespass warning. Id. When Plaintiff refused to give his name, he was arrested for obstruction and admonished from Starbucks. Id.

    **2.     Stolen Truck, September 2002.**

Plaintiff alleges that the Seattle Police refused to investigate after James Wlos stole his Ford pickup. Compl., docket no. 4, at 4. The Seattle Police have no record of Plaintiff's reported theft, but have a record of a property damage call on September 19, 2002, where Plaintiff was a suspect. See Martin Decl., docket no. 30-5, Ex. A. The victim was a witness in a criminal case against Plaintiff, and believed he was responsible for property damage to her vehicle. Id.

    **3.     Lincoln Towing, August 2003.**

ORDER 2–

1   Plaintiff alleges that the Seattle Police conspired with Lincoln Towing to stop his
2 vehicle and hold him at gunpoint. Id. On August 11, 2003, Officer Ritter responded to a call
3 at Lincoln Towing. See Ritter Decl., docket no. 30-7, Ex. A. Plaintiff was allegedly
4 intimidating employees inside the offices of Lincoln Towing. Id. at 1. Plaintiff had been
5 armed on the premises in the past with a knife and rifle, and was stopped at gunpoint by
6 Officer Ritter. Id. Officer Ritter located a knife on Plaintiff, which was 1/8" shorter than the
7 legal limit. Id. at 2. When Lincoln Towing was unable to produce a no-contact order,
8 Plaintiff was released.

9   **4.   Starbucks Dog Incident, October, 2003.**

10   Plaintiff alleges that he and his dog Sweetie Pie were harassed and intimidated at
11 Starbucks by Police. See Compl., docket no. 4, at 3. On October 22, 2003, Officer Molly
12 Clark observed Minetti sitting outside Starbucks with a "very large" dog that was not
13 leashed, and was wandering near the store. See Clark Decl., docket no. 30-2, Ex. A.
14 Concerned for the safety of the dog, and for pedestrians whose path was being blocked,
15 Officer Clark informed Plaintiff that he needed to keep his dog leashed. Id. at 1. Officer
16 Clark also informed Plaintiff that his dog needed to be licensed. Id. at 2. Plaintiff became
17 upset and screamed at Officer Clark, repeatedly demanding her name and badge number. Id.
18 Before Officer Clark could give Plaintiff her name and badge number, he left the scene. Id.

19   **5.   University Village, January 2004.**

20   Plaintiff alleges he and his dog Sweetie Pie were again disturbed and harassed at the
21 University Village Starbucks. See Compl., docket no. 4, at 3. On January 2, 2004, Officer
22 Debra Pelich observed Plaintiff suspiciously digging through items in the bed of a truck in a
23 dimly lit area at University Village. See Pelich Decl., docket no. 30-6, Ex. A. As Officer
24 Pelich approached, Plaintiff went into a verbal rage, screaming "You fucking dyke cop, you
25 fucking bitch. You fucking woman get on the force and become fucking men." Id. at 2.
26 Plaintiff refused to identify himself, and the officers confirmed that the vehicle was

ORDER  3−

registered to another individual. Id.  However, when University Village security later confirmed that they had seen Plaintiff in the vehicle in the past, he was not arrested. Id.

### 6. Value Village, January 2004.

Plaintiff alleges that he was harassed by Seattle Police after he declined to fight a "two-time loser" drug dealer named "Dale." Plaintiff alleges Seattle Police refused to take his report, stated they were going to arrest him, and escorted him from the store with assistance from the Store Manager. See First Minetti Aff., docket no. 44-2, at 1. He alleges he was allowed to leave the premises, after being escorted from the premises. Id. The City of Seattle has no records or incident reports related to this event. See Motion for Summary Judgment, docket no. 30-1, at 4.

### 7. Dog Theft, February 2004.

Plaintiff alleges that Seattle Police took part in the theft of his dog, Sweetie Pie, by forcing him to give the dog to James Wlos. See Compl., docket no. 4, at 4. On February 13, 2004, Wlos untied a dog outside Starbucks, put the dog is his car, and drove away. See Stevens Decl., docket no. 30-8, Ex. A. Minetti called Seattle Police to report the theft of his dog, Sweetie Pie. Id. When Officer Stevens arrived at the scene, Sweetie Pie responded to both Plaintiff and Wlos. Id. at 2. Animal Control determined that the dog had a microchip registered to Plaintiff. Id.  However, Wlos had tags matching the dog which pre-dated the microchip installation. Id. Plaintiff refused to answer Officer Stevens when asked where he got the dog. Id. at 3. Several more witnesses showed up and identified the dog as belonging to Wlos. Officer Stevens released the dog to Wlos because he determined that Wlos was the first to have the dog on record. Id.

### 8. Vehicle Damage, February 2004.

Plaintiff alleges that on February 20, 2004, his 1983 Chevy Caprice was stripped by Wlos, and placed in impound and for auction by Seattle Police. See Compl., docket no. 4, at 5. Officer Michelle Fox completed an incident report for Plaintiff on March 27, 2004, five

ORDER  4–

weeks after the alleged theft.  See Fox Decl., docket no. 30-4, Ex. A.  Plaintiff admitted that he did not report the theft for five weeks, and could not identify the location of the vehicle before impound.  Id. at 1-2.  Plaintiff's vehicle was impounded after the theft by Lincoln Towing and put up for auction, after being parked over 72 hours.  Id. at 2.

### 9. Vehicle Damage, March 2004.

Plaintiff alleges that Wlos broke the window on Plaintiff's 1989 Ford Escort, took property, and hammered the ignition lock.  See Compl., docket no. 4, at 5.  Plaintiff alleges that the car was "pointed out to Wlos by SPD (or Lincoln Tow)."  Id.  The City has no records of this incident.

### 10. Wlos Conspiracy.

Plaintiff alleges that James Wlos and his associates have "preyed" upon Plaintiff, and that Wlos has claimed favorable treatment from law enforcement.  Compl., docket no. 4, at 4.

## B. King County

Plaintiff alleges that various judges of the King County District and Superior Courts have conspired with the City of Seattle and the King County Sheriff's office to deny him access to the King County Courthouse.  Compl., docket no. 4, at 6.  He further alleges that various judges have failed to properly comply with state law and court rules, dismissed his cases, and improperly denied him relief.  Id.

## C. State of Washington

Plaintiff alleges that various Washington State agencies have failed to investigate claims that he has submitted regarding the police department and the sheriff's office, and to protect him from their actions.  Plaintiff also alleges that the Washington State Supreme Court and Court of Appeals have failed to protect his rights, and improperly denied him relief. Compl., docket no. 4, at 7.

# DISCUSSION

ORDER  5−

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994). Moreover, in ruling on a motion for summary judgment, the Court may only consider evidence that would be admissible at trial, and may not consider inadmissible hearsay. Key Bank of Puget Sound v. Alaskan Harvester, 738 F. Supp. 398, 401 (W.D. Wash. 1989).

For purposes of these motions for summary judgment, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). However, if no *factual* showing is made in opposition to a motion for summary judgment, the District Court is not required to search the record *sua sponte* for some genuine issue of material fact. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) ("The district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein.") (emphasis added).

**A.     Statute of Limitations**

Under Washington law, a two-year statute of limitations applies for intentional torts, including "assault, assault and battery, and false imprisonment." Wash Rev. Code §

ORDER  6–

4.16.100. False arrest claims are also barred under the two-year statute of limitations. See Heckart v. City of Yakima, 42 Wash. App. 38, 38-39 (1985). Plaintiff filed this lawsuit on July 7, 2004. See Compl., docket no. 4. As such, Plaintiff's claim for his April 21, 2002 arrest at Starbucks, and the related intentional torts and false imprisonment allegations, are barred by Plaintiff's failure to bring suit within the two-year statute of limitations.

**B.    Claim Filing Statutes**

Washington State's claim filing statute, Wash. Rev. Code § 4.96.020, requires the filing of a claim for damages with a local government entity before commencing legal action. Similarly, Seattle Municipal Code § 5.24.005 bars the commencement of action against the City of Seattle for monetary damages without the filing of a written claim for damages with the City Clerk. Strict, not substantial, compliance is required. See Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash. App. 304, 307 (1996). The failure to comply with the claims filing statutes requires dismissal of the claims. See Daggs v. City of Seattle, 110 Wash.2d 49 (1988); Sievers v. City of Mountlake Terrace, 97 Wash. App. 181, 183 (1999) (barring plaintiff's complaint with prejudice on summary judgment due to failure to strictly comply with the 60-day waiting period by commencing suit 59 days after filing her notice of claim).

Plaintiff has filed two Claims for Damages with the City of Seattle since January 15, 2003. Quiggle Decl., docket no. 30-9, ¶ 3. Plaintiff's January 15, 2003, Claim for Damages alleges the failure of law enforcement to protect him, the failure of law enforcement to accept his complaints for auto theft-assault, and false arrest on April 21, 2002. See Quiggle Decl., docket no. 30-9, Ex. A. Plaintiff's February 24, 2004, Claim for Damages alleges the theft of Sweetie Pie, and damage claims for separation trauma and loss of consortium. Id., Ex. B.

Plaintiff has not filed claims for damages for all other incidents alleged in his Complaint, including the (1) September 2002 theft of his Ford truck by James Wlos; (2) the August 2003 disturbance at Lincoln Towing; (3) the October 2003 disturbance and trespass

ORDER  7−

at Starbucks; (4) the January 2004 altercation at University Village; (5) the January 2004 altercation at Value Village; (6) the February theft and vandalism to his Chevy Caprice; (7) the March theft and vandalism to his Ford Escort; and (8) the conspiracy theory involving James Wlos. Plaintiff has failed to comply with the claim filing statute relating to these claims. See Wash. Rev. Code § 4.96.020; Seattle Muni. Code § 5.24.005. As such, Plaintiff's state law claims relating to these eight (8) incidents are DISMISSED with prejudice, including Plaintiff's claims for assault, false arrest, false imprisonment, and malicious prosecution, because Plaintiff has not submitted claims for damages.

**C.    RICO**

The RICO statute prohibits certain acts related to a "pattern of racketeering activity." 18 U.S.C. § 1962. Racketeering activity is a defined term that includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . ." 18 U.S.C. § 1961(1). Plaintiff alleges a conspiracy involving city, county, state, and federal governments. Compl., docket no. 4, at 6. However, he produces no evidence in support of the conspiracy allegation. Plaintiff's allegations of RICO violations and conspiracy are insufficient to withstand summary judgment. Plaintiff's references to the investigations of him by Seattle Police are related to his conduct, and past behavior and activities. Plaintiff's claims for violations of RICO are DISMISSED with prejudice against all parties named in the Complaint, including the City of Seattle, King County, and the State of Washington.

**D.    42 U.S.C. § 1983**

In order to establish liability against a local, county, or state government under 42 U.S.C. § 1983, Plaintiff must prove (1) that a municipal policy or custom existed, which (2) directly caused a violation of his constitutional rights. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Plaintiff argues that various anonymous Seattle Police officers made statements indicative of a policy or custom. One anonymous officer allegedly told him in

ORDER  8–

1997 that the Seattle Police Department had received "orders from above" to "come down" on him. Another anonymous officer allegedly bragged about perjury in a case against Plaintiff, and a third anonymous officer allegedly threatened Minetti. However, even taken in the light most favorable to Plaintiff, these anonymous hearsay allegations are insufficient as a matter of law to establish that any municipal policy or custom existed. An isolated incident of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of a policy or custom. Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

Moreover, even if a policy or custom existed, Plaintiff cannot show that it caused a violation of his rights. A municipality cannot be held liable under § 1983 merely because plaintiff suffers a deprivation of federal rights at the hands of a municipal employee. See Bryan County Commissioners v. Brown, 520 U.S. 397 (1997). Rather, the plaintiff must identify a municipal policy or custom which itself caused the plaintiff's injury. Id. Because Plaintiff has failed to identify any municipal policy or custom responsible for the constitutional violations alleged, Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED with prejudice against all parties.

### E. Qualified Immunity and Absolute Immunity

Plaintiff has only brought suit against the City of Seattle, King County, and the State of Washington. See Compl., docket no. 4, at 1. Nevertheless, his Complaint identifies a number of individual city and state employees. Id. at 7. The Attorney General argues these individuals are entitled to qualified or absolute immunity.

#### 1. State Employees

"Qualified immunity 'is an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell v. Forsythe, 472 U.S. 511, 526 (1985)). The threshold inquiry is whether, taking the facts in the light most favorable to the Plaintiff, the conduct of the state employees violated one of Plaintiff's constitutional rights. Id. at 201. If no violation occurred, then no further inquiry is

ORDER  9–

1  necessary and the suit should be dismissed. Id. However, if a constitutional violation may
2  have occurred, then the inquiry turns to whether the constitutional right was clearly
3  established. Id. A right is clearly established if it is clear enough that a reasonable official
4  would have recognized that his conduct was unlawful. Id. at 202. The plaintiff bears the
5  burden of proving that the specific right claimed was clearly established at the time of the
6  alleged misconduct. Davis v. Scherer, 468 U.S. 183 (1984).

7  Plaintiff has alleged no violation by state employees of any specific right under
8  federal law. His primary complaint is that state employees failed to investigate his numerous
9  complaints against the City of Seattle and King County. See Compl., docket no. 4, at 6-7.
10 However, there is no clearly established right to have complaints against local jurisdictions
11 investigated by state employees. There was no reason for state employees to believe their
12 conduct was anything but lawful. The State employees are entitled to qualified immunity,
13 any claims against state employees must be DISMISSED with prejudice.

14 **2.     Judges and Court Staff.**

15 Plaintiff also alleges that judges and court staff failed to adequately protect his rights,
16 improperly dismissed his claims, and improperly barred him from the courthouse. A judge is
17 immune from civil actions for conduct undertaken as a judicial officer. Mireles v. Waco,
18 502 U.S. 9 (1991) (applying immunity where judge ordered police officers to use force and
19 to bring an attorney before the bench). The immunity is applicable regardless of whether the
20 suit is styled as being against the defendant in their official or individual capacity. Hirsh v.
21 Justices of the Supreme Court of California, 67 F.3d 708, 715 (9th Cir. 1995). Judicial
22 immunity extends to the court staff. Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002)
23 (court clerks); Oliva v. Heller, 839 F. 2d 37, 39-40 (2d Cir. 1988) (law clerks); Rodriguez v.
24 Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (court staff).

25 Plaintiff has filed a number of actions in courts throughout Washington and has
26 pursued those cases at the appellate level. See Meyer Decl., docket no. 15, at ¶¶ 2, 3, Attach.

ORDER   10–

1. There is no denial of access to the courts simply because Plaintiff did not get the outcome he wanted.  Plaintiff cannot sue judges or court staff because his cases were dismissed. Plaintiffs' claims against the judges and against King County are barred by judicial immunity and are DISMISSED with prejudice.

**F.   Probable Cause**

As an alternative basis for dismissal of Plaintiff's claims against the City of Seattle for false arrest, false imprisonment, or malicious prosecution, the City argues that probable cause bars Plaintiff's claims.  Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed.  Ybarra v. Illinois, 444 U.S. 85, 91 (1979).  The validity of an arrest is determined by objective facts and circumstances known to the officer at the time of the arrest.  Beck v. Ohio, 379 U.S. 89, 96 (1964).  "It is immaterial whether or not the [arrestee] was actually violating the law at the time of the arrest if in fact his conduct was such as to lead a reasonable prudent officer to believe in good faith he was violating the law."  Sennett v. Zimmerman, 50 Wash.2d 649, 651 (1937).

False arrest or imprisonment "is the unlawful violation of a person's right of liberty or the restraint of that person without legal authority."  Bender v. Seattle, 99 Wash.2d 582, 590-91 (1983).  Probable cause is a complete defense to an action for false arrest and imprisonment.  Hanson v. Snohomish, 121 Wash.2d 552, 563 (1993).  Generally speaking, malicious prosecution is the malicious institution or continuation of a prosecution, without probable cause, causing damage or injury, where the proceedings are terminated in favor of the plaintiff.  Hanson, 121 Wash.2d at 558.  The existence of probable cause is a complete defense to an action for malicious prosecution.

Plaintiff only generally disputes the factual allegations of the various Officers, as contained in their declarations.  Plaintiff argues that the supporting declarations are incomplete and that he "need not herein refute each declaration." Id. at 4.  This position is

ORDER  11–

untenable. Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the opposing party must show that there is a genuine issue of fact for trial. Matsushita, 475 U.S. at 586. Plaintiff here must present significant and probative evidence to rebut the Defendant's well-supported claims of probable cause, in order to succeed on his claims for false imprisonment or malicious prosecution. Intel, 952 F.2d at 1558. To defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994). Plaintiff must specifically refute the allegations of fact and demonstrate that there is a genuine issue of material fact for trial. Plaintiff has not presented evidence of any arrest, imprisonment, or prosecution, that was unsupported by probable cause. As such, the Court finds Plaintiff's claims of false imprisonment, false arrest, and malicious prosecution, are barred by probable cause, as an alternative basis for dismissal.

**G.    Wlos Conspiracy.**

Plaintiff presents no evidence of a conspiracy between James Wlos and the City of Seattle. All claims relating to the conspiracy allegation must be DISMISSED with prejudice.

**H.    Substantive Due Process.**

Plaintiff's Complaint states a substantive due process claim, alleging arbitrary and capricious government action by state employees, for failing to investigate his claims against local government entities. To establish a violation of substantive due process, the plaintiff must prove that the government's action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Village of Euclid Ohio v. Ambler Realty Co., 272 U.S. 365, 395 (1926). The Court "looks to such factors as the need for the governmental action in question, the relationship between the need and the action, the extent of the harm inflicted, and whether the action was taken in good faith or for purpose of causing harm." Sinaloa Lake Owners v. Simi Valley, 882 F.2d 1398,

ORDER  12–

1409 (9th Cir. 1989), cert. denied, 494 U.S. 1016 (1990).  Malicious, irrational, and plainly arbitrary actions are not within the legitimate purview of the state's power.  Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 520-521 (1977) (Stevens, J., concurring).

In order to maintain a claim of a constitutional deprivation of due process, the plaintiff must prove that the actions of the individual defendants were so egregious and so outrageous that they may fairly be said to shock the contemporary conscience.  County of Sacramento v. Lewis, 118 S. Ct. 1708, 1717 n.8 (1998); see also Rochin v. California, 342 U.S. 165 (1952) (forced pumping of a suspect's stomach).  The State argues that the behavior by the state employees here cannot be said to shock the conscience.  This argument has merit.  Even assuming that Plaintiff did make the complaints that he alleges, the fact that no action or investigation was undertaken by state employees does not shock the conscience, and cannot support a finding of a civil rights violation.  Plaintiff's substantive due process claim is therefore DISMISSED with prejudice.

## CONCLUSION

The Court GRANTS the Motions for Summary Judgment, docket nos. 14 and 30, as to all claims.  Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 29th day of June, 2004.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER  13–